State *v.* Thomas.

---

## STATE *vs.* JOHN THOMAS.

The statute which imposes a penalty for keeping a place in which it is reputed that intoxicating liquors are kept for sale, is not unconstitutional.

The statute treats such a reputation, where clearly established, as decisive evidence that liquors are in fact kept there for sale. The defendant is at liberty to show that the reputation is unfounded.

The jury are the judges of the law as well as of the facts in a criminal case; but are as much bound by the rules of law as the judge on the bench.

Where the judge instructed the jury that it would be absurd for them to decide a statute to be unconstitutional when the Supreme Court of the state had held it to be constitutional, it was held to be no ground for granting a new trial.

And where this court had had the same statute before it and without passing directly upon its constitutionality had yet given it a construction which took from it the particular character which it was now claimed rendered it unconstitutional, it was held that the allusion of the judge to the decision of this court as sustaining the constitutionality of the statute was not sufficient ground for granting a new trial.

State *v.* Thomas.

GRANDJUROR'S COMPLAINT for keeping a place where it was reputed that intoxicating liquors were sold; brought, by appeal from a justice, to the Superior Court in Fairfield County.

The complaint was as follows:—That on the 30th day of August, 1879, at said town of Stamford, John Thomas of Stamford, did keep a house, store, shop and saloon, in which for a long time previous it had been, then was, and still is, reputed that spirituous and intoxicating liquors, ale, lager beer, and Rhine wine are kept for sale, without having a license therefor, contrary to the statute in such case made and provided.

The case was tried to the jury on the plea of not guilty, before *Culver, J.*

Upon the trial the counsel for the defendant claimed, and asked the court to charge the jury, that the section of the statute on which the prosecution was based was unconstitutional and void, and that the jury were the judges of the law as well as of the fact, and if they conscientiously believed that the section was unconstitutional, they had a right to so decide, inasmuch as the Supreme Court had never decided the section to be constitutional.

The court did not thus instruct the jury, but instructed them that they were the judges of the law as well as of the facts in the case, and that if they believed the section uncontional, they had a right so to decide; but that they were as much bound by the law as the judge on the bench, and that it was not to be presumed they would be guilty of such an absurdity as to decide that the section in question was not valid, when the Supreme Court of the state had held otherwise.

The jury returned a verdict of guilty, and the defendant brought the record before this court by a motion in error. He also filed a motion for a new trial for error in the charge of the court.

*J. B. Curtis*, in support of the motions.

1. The section of the statute which the defendant is charged with violating, is in these words:—"Every person who shall keep a place in which it is reputed that intoxicating

liquors are kept for sale, without having a license therefor, shall be fined," &c. The criminal part of the conduct here contemplated is in the reputed character of the place, and not in the mere act of its being kept, for every man has the right to keep "a place," and if the legislature should forbid it, it would be in express violation of the constitutional guarantee of the right of private property. We must therefore come to this conclusion, and this alone, that it is what is reputed of the place kept, and not merely the keeping of the place, that constitutes the supposed offense for which the defendant is to be punished.

2. It is very clear that what a place is reputed to be depends upon what the people of the neighborhood say about it. The statute therefore seeks to punish a man for what the people say of him, and not for what he has committed or omitted. In other words, it punishes a man for the words, acts and opinions of other persons, and not for any offense he has committed himself. This, we submit, no legislature has the right to do. The legislature cannot pass a law to punish a man criminally, except for his acts or omissions, and for that which clearly comes within the definition of a crime or misdemeanor. A crime or misdemeanor is an act committed or omitted in violation of a public law either forbidding or commanding it. 4 Bla. Com., 4. And the constitution provides that no person shall be arrested or punished except in cases clearly warranted by law. Art. 1, sec. 10.

3. A construction of the statute that makes it seek to convict and punish a man for actually keeping a place where intoxicating liquors are kept for sale, by means of evidence showing what character the place is reputed to have, is equally open to objection. If what people say in reference to a man's place of business or residence, can be used as evidence against him in a criminal prosecution, then the legislature seeks by legislation to make evidence where such evidence does not exist. In other words, it says that what people say shall stand in the place of actual fact, and shall be sufficient to convict a man, although no such fact may exist. This is simply another way of saying that a man may be convicted

and punished for what other people think and say of him—
that what people think and say of him shall be equivalent to
the commission of the offense, and shall be conclusive
evidence of the offense. But this construction is open to
the further objection that we have a statute covering the
ground contemplated in this construction. It provides that
the keeping of intoxicating liquor with the intent to sell
without license shall be a crime. Gen. Statutes, p. 520, sec.
41. And it can hardly be presumed that two statutes could
have been passed which would be so exactly alike. We are
therefore driven to the conclusion that the legislature contem-
plated just what it says—the punishment of a man for his
bad reputation. Thus construed it is also open to this objec-
tion, that the right of the state to establish a rule of evidence
which shall take away one of the rights of the citizen,
infringes upon a trial by due course of law. Now it is well
known that the common law everywhere, and by numerous
decisions, allows a prisoner to put his own good character in
evidence in cases of circumstantial testimony against him;
but it is solely his right and to be used at his option. *Com-
monwealth* v. *Webster*, 5 Cush., 325. But the state cannot
put the bad character of the citizen in evidence. 1 Whar-
ton's Crim. Law, § 824. Such a construction is also open to
another provision of the constitution, that the witnesses shall
confront the accused. In no case can the declaration of other
persons be admitted, although such persons may have had
actual knowledge of the crime, except in the sole case of the
dying declaration of a person on whom a homicide has been
committed. Cooley's Const. Lim., 318. To adjudge a man
guilty of an offense upon the declarations of people who are
not in court, who have uttered their declarations thoughtlessly
or maliciously, without the sanction of an oath or the ordeal
of a cross-examination, would be simply monstrous.

4. It is very clear that the defendant was entitled to the
charge that the jury were judges of the law as well as of the
fact, and had a right to decide upon the constitutionality of
the section in question. But the judge should not have told
them that the Supreme Court had decided that the section

was constitutional, and that they were bound by such decision, because the court had never so decided. The jury were misled by the charge and did not pass upon the constitutionality of the law, as they might and should have done.

*J. H. Olmstead,* State's Attorney, for the State.

PARK, C. J. The object of the statute under consideration, like that of other statutes upon the same subject, is to prevent the unlawful traffic in intoxicating liquors. One section forbids all unlicensed persons to keep such liquors with intent to sell them. Keeping such liquors for such purpose would be perfectly harmless, if it could be certain that nothing would follow from it. But the statute takes it for granted that where such liquors are thus kept, opportunities will present themselves for carrying the intent into execution, and sales of the liquor will in fact be made. For this reason the keeping of such liquors for such a purpose is regarded as equivalent to the selling of them. Another statute forbids the keeping open on the Sabbath day of any place in which it is reputed that intoxicating liquors are exposed for sale. The keeping open of such places, if that was all, would be no worse than the keeping open of the places without such liquors and without such reputation. But the legislature saw that if such places were suffered to be kept open intoxicating liquors would be sold in them, and that keeping open was only another name for selling liquors; and all experience verifies the conclusion. Drunkards frequent such places as flies frequent the shambles of a butcher; and one could as easily be prevented as the other. It might as well be claimed that the statute against keeping open such places on Sunday is unconstitutional, as that the statute under consideration is so. The language of the statute is as follows :—" Every person who shall keep a place in which it is reputed that intoxicating liquors are kept for sale, without having a license therefor, shall," &c. This court, in the case of *State* v. *Morgan,* 40 Conn., 44, said that "this statute was intended to reach places where intoxicating liquors are kept for sale, and

such places only.     *     *     The statute seems to presume that if a place has the reputation of being one where intoxicating liquors are kept for sale, it is a place where such liquors are in fact kept for sale, and therefore makes it criminal for a man to keep a place which has such reputation." All that can be said is, that the statute treats a place having such reputation, unexplained and uncontradicted, just as it treats a place where such liquors are in fact sold, or are in fact kept for sale, because the two places are really of the same character.

It is little to the purpose to talk about natural rights in such cases, and the danger of convicting innocent men upon insufficient evidence. The crime of selling intoxicating liquors is peculiar.· Other crimes seek concealment, but the business of selling such liquors cannot be successfully carried on in secrecy. The occupation requires the broad light of day. A liquor establishment is as well known to the community in which it exists, as a grocery, dry goods, mechanical or manufacturing establishment would be. Its customers are easily distinguishable from others; they can be easily recognized at a distance. They loiter about the establishment as drones about a hive, and constitute a sign for the place as unmistakable as one in letters over the door. The ground upon which the defendant claims the statute to be unconstitutional is, that the crime is made to consist in the reputation of the place, irrespective of its actual character. Here is the defendant's error. The crime consists in the character of the place; and its reputation, unexplained and uncontradicted, is taken as conclusive evidence of its character as a place where intoxicating liquors are in fact sold.

The counsel for the defendant on the argument of the case to the jury claimed, and asked the court to charge the jury, that the statute in question was unconstitutional, and that the jury were judges of the law as well as of the fact, and that if they conscientiously believed that the statute was unconstitutional they had a right to so decide. The court charged them that they were judges of the law as well as of the facts, but that they were as much bound by the law as the judge

on the bench, and that it was not to be supposed that they would decide that the statute in question was not valid when the Supreme Court of the state had held it to be valid. The counsel for the defendant complain of this charge and ask for a new trial on account of it. They say that the Supreme Court had never held the statute constitutional and so that the judge misled the jury and prevented them from freely exercising their right to judge for themselves of the validity of the law. They say that the judge had a right to instruct them as to what the law was, and that he might express his own opinion as strongly as he pleased, but that he had no right to add to the influence of his own opinion with the jury the weight of a supposed decision of the Supreme Court, when no such decision had in fact ever been made.

The whole objection then lies to the fact of the judge's reference to a supposed opinion of this court. Now it can really have made little difference whether the court had actually made such a decision, so long as the judge was right in his view of the law and this court was prepared to sustain him in that view. The most that can be said is that the jury were misled into taking the only view of the law that they could correctly have taken. The defendant lost a possible chance of the jury's erroneously deciding the law in his favor. This ground for a new trial does not commend itself to our sense of justice. But we need not decide whether, if that were the precise state of the case, it would be a sufficient ground for granting a new trial. This court had in fact decided the question as to the validity of the statute. In the case of *State* v. *Morgan*, before referred to, the court had this very statute under consideration, and then gave it such a construction as to take it wholly out of the question now made with regard to its constitutionality. The point now made against its constitutionality is, that it undertakes to punish a man for the reputation which his house has acquired, while such reputation may have no basis of fact, and may have grown out of the mere idle or malicious talk of his neighbors. The passage we have before quoted from the opinion in that case shows that the court construed the statute as intending

only such reputation as was founded upon and so a legitimate proof of actual sales of liquor; and that it was open to any person prosecuted under the statute to show that the reputation was an unjust one and without foundation. With this qualification there could be no danger of his being convicted upon an unfounded reputation. The judge very properly therefore regarded the question of the constitutionality of the statute as already disposed of by the court.

There is no error in the judgment below and a new trial is not advised.

In this opinion the other judges concurred.