MARION A. MORSE *vs.* SIDNEY A. BROWN, SHERIFF.

Second Judicial District, Norwich, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Chapter 122 of the Public Acts of 1907, making it a criminal offense to keep a house which is "reputed" to be a house of ill-fame, is not unconstitutional, since the Act, properly interpreted, means the keeping of a house which is in fact such as it is reputed to be; and therefore a conviction upon an information charging the keeping of a house "reputed to be a house of ill-fame," is a valid conviction of a criminal offense.

Argued October 18th—decided December 16th, 1910.

WRIT OF HABEAS CORPUS to determine the legality of the plaintiff's imprisonment, brought to the Superior Court in New London County where a demurrer to the defendant's return was overruled (*Shumway, J.*) and judgment rendered for the defendant, from which the plaintiff appealed. *No error.*

*Lee R. Robbins,* for the appellant (plaintiff).

*Charles B. Whittlesey,* Prosecuting Attorney, for the appellee (defendant).

HALL, C. J.   The complaint, upon which the writ of *habeas corpus* was issued, alleges that the plaintiff was unlawfully imprisoned by the defendant, sheriff of New London county.   In his return the defendant alleges that he holds the plaintiff in the New London county jail by virtue of a mittimus directed to him, setting forth that at a term of the Criminal Court of Common Pleas held at New London county the plaintiff was "convicted of the crime of unlawfully keeping and maintaining a house reputed to be a house of ill-fame, and which is reputed to be resorted to for the purposes of prostitution and lewdness," and was by said court sentenced to be confined in the common jail for the term of thirty days, etc.

To this return the plaintiff demurred, upon the grounds, in substance, that the keeping of a house *reputed* to be a house of ill-fame and *reputed* to be resorted to for the purposes of prostitution and lewdness, is not a crime; and that General Statutes, § 1316, as amended by chapter 122 of the Public Acts of 1907, under which the accused was prosecuted, conflicts with the provisions of § 9, Article First, § 21, Article First, § 1, Article First, of the Constitution of Connecticut, and with the provisions of the Fifth, Sixth, and Fourteenth amendments of the Constitution of the United States.

The action of the trial court in overruling this demurrer is the only ground of appeal.

The Act under which the plaintiff was prosecuted and convicted imposes a punishment by fine or imprisonment, or both, upon any person "who shall keep a house which is, or is reputed to be, a house of ill-fame, or which is resorted to, or is reputed to be resorted to, for the purposes of prostitution or lewdness."   Public Acts of 1907, p. 674, Chap. 122.

Practically the same questions respecting the con-

stitutionality and validity of this statute which are presented by the plaintiff's demurrer have been considered and decided by this court in the following cases: *State* v. *Morgan,* 40 Conn. 44; *State* v. *Thomas,* 47 id. 546; *State* v. *Moriarty,* 50 id. 415; *State* v. *Anderson,* 82 id. 111, 72 Atl. 648; *State* v. *Anderson,* 83 Conn. 55, 75 Atl. 81.

In the first three of these cases this court said, in effect, that our statute making it a criminal offense to keep, without a license, a place in which it was reputed that intoxicating liquors were sold, meant the keeping of a place the said reputation of which was founded in fact. In other words, that the word "reputed" as used in the statute, and in the information upon which the accused was tried, was to be regarded as describing the real character of the place, of which character the reputation was prima facie evidence, and that the accused could always overthrow such prima facie evidence of reputation by proof that such was not the real character of the place. In each of these three cases this court held that the statute creating the offense was constitutional, and that a conviction under an information charging that the place alleged to be kept was reputed to be of such unlawful character, was valid.

Following the reasoning of these above cases, in *State* v. *Anderson,* 82 Conn. 111, 114, 72 Atl. 648, which was an information under the statute upon which the present plaintiff was convicted, we said: "The keeping of a house or place which is reputed to be of an unlawful character is not in itself the real criminal offense charged, even in cases where such reputed character may properly be alleged and proved"; and again, in the same case in the 83 Conn. 55, 75 Atl. 81, we said that the adoption in this State of the rule permitting proof of reputation as prima facie evidence of the real

character of the place alleged to have been kept by the accused, neither rendered the statute upon which the information was based, nor the method of proceeding by which the accused was convicted, unconstitutional or invalid.

These cases are decisive of the one before us. The mittimus shows that the defendant was convicted of keeping a house *reputed* to be a house of ill-fame. Presumably that was the language of the charge in the information. That language, as we have decided in the several cases cited, charges a criminal offense, namely, the keeping of a place whose reputation of being a place unlawful to keep is founded on fact. Since, as we have said, an information. charging the accused with keeping a house reputed to be a house of ill-fame charges a criminal offense, it follows that a conviction upon an information drawn in that language is a valid conviction of a criminal offense.

The real character, under our law, of charges in cases of this kind, of keeping places reputed to be unlawful, is presumably well understood. The accused is presumably always permitted to show that the bad reputation is unfounded, and the jury instructed as to the real meaning of the charge and as to the proof necessary to sustain it.

There is no error.

In this opinion the other judges concurred.