LONG *v.* STATE.

. Opinion delivered May 28, 1904.

1. CERTIORARI—PERFECTING RECORD.—It was not reversible error to refuse to issue a writ of certiorari, so as to have the record show copies of appellant's motion to quash the indictment and his demurrer to the same, where the indictment was sufficient, and the record shows that it was. regularly and properly found, returned into court, numbered and filed.   (Page 428.)

2. DEFENDANT AS WITNESS—CROSS-EXAMINATION—Where the testimony of the only eye-witness to a homicide was taken before the examining court and used at the trial, and defendant had an opportunity to cross-examine him, and defendant testified on direct examination that such witness said to him at the time deceased was killed, "Look out, he (deceased) is going to shoot you!" it was not error to permit the state, on cross-examination, to ask defendant whether he instructed his attorneys at the examination of such witness to ask him whether he used the above language at the time of the killing.   (Page 429.)

3. SAME—IMPEACHMENT.—It was not error to permit the state, on cross-examination, to ask defendant if he had not heard that one of his associates had been convicted of train robbery and murder.   (Page 430.)

4. WITNESS—EXPLANATION OF ABSENCE.—It was error to refuse permission to defendant to explain the absence of a material witness.  (Page 431.)

5. HOMICIDE—EVIDENCE—REPUTATION OF DECEASED.—Where defendant and deceased resided in different and distant communities, the general reputation of deceased for going armed is inadmissible, as not tending to furnish reasonable ground for defendant to believe that he was in imminent danger of losing his life.   (Page 432.)

6. TRIAL—MISCONDUCT OF ATTORNEY IN ARGUMENT—Where the prosecuting attorney, after being reprimanded by the court, persisted in repeating that the only eye-witness to the killing, whose deposition was material to defendant's case, was being confined in jail for murdering a poor old Confederate soldier, although there was no evidence to that effect, such conduct was improper and prejudicial.   (Page 432.)

Appeal from Hempstead Circuit Court.

JOEL D. CONWAY, Judge.

Reversed.

*John N. Cook,* for appellant.

Appellant's motion for *certiorari* should have been granted. 19 Ark. 178; 15 Ark. 395; 13 Ark. 720. A witness is protected from testifying as to any communication he may have made to his attorneys in confidence. 21 Ark. 387; 33 Ark. 771; 65 Ark. 389. The defendant's silence is not subject of comment. Sand. & H. Dig. § 2910. It was error to compel appellant to answer the question as to what he had heard concerning witness McDaniel. 1 Greenleaf, Ev. § § 99-101; 22 Ark. 477; Sand. & H. Dig. § 2958; 70 Ark. 272; 49 Ark. 156; 58 Ark. 277. No predicate for impeachment had been laid. 65 Ark. 475; 70 Ark. 272. The fact that a witness was convicted of an infamous crime cannot be proved by hearsay. 70 Ark. 272; 49 Ark. 156; 58 Ark. 277; 1 Greenleaf, Ev. § 375. Nor can it be proved by proof of association with felons. 58 Ark. 473; 46 Ark. 141; 66 Ark. 286; 56 Ark. 345; 25 Ark. 89; 69 Ark. 648; 69 Ark. 653. It was error to refuse to permit appellant to introduce testimony as to the dangerous character of deceased. 43 Tex. 242; 15 Tex. Cr. 96; 20 *Id.* 1; 28 *Id.* 17; 61 S. W. 124. And that deceased constantly went armed. 61 S. W. 124. The instruction on the question of self-defense was erroneous. 67 Ark. 594; 22 Ark. 356; 29 Ark. 263; 69 Ark. 148. The jury should consider all the evidence. 62 Ark. 312. Instruction No. 15 was erroneous. 62 Ark. 312; 55 Ark. 594; 29 Ark. 348. The sixth instruction asked by appellant should have been given. The argument of the prosecuting attorney was clearly prejudicial, and the admonitions of the court were of no effect. 58 Ark. 353, 473; 62 Ark. 126; 61 Ark. 157; 70 Ark. 285, 305; 69 Ark. 643; 65 Ark. 389, 486, 619; 63 Ark. 174; 67 Ark. 365.

*George W. Murphy, Attorney General,* for appellee.

BATTLE, J. Levi Long was indicted by a grand jury of the Miller circuit court for murder in the first degree, committed by killing E. G. Garrett. The defendant filed a motion to quash

the indictment and a demurrer, both of which were overruled. On his motion for change of venue the cause was transferred to the Hempstead circuit court. A transcript of the record and proceedings in the case was filed in that court, but the defendant suggested that it was defective because it did not contain copies of his motion and demurrer, and asked that a writ of *certiorari* be issued, directing the clerk of the Miller circuit court to complete it in that respect, which motion the court denied.

In a trial by jury the testimony of Napoleon H. McDaniel, taken and reduced to writing in an investigation before a justice of the peace, was read as evidence, by consent, on the part of the state, which, in part and substantially, is as follows: On the 2d day of January, 1903, witness met the defendant and the deceased at Texarkana, in this state. He saw the deceased and defendant conversing frequently during the day. "Late in the afternoon deceased, defendant and witness took a drink in a saloon, and deceased started out, saying that he had to go." They went out of the saloon, and walked down Broad street until they reached the 16 to 1 saloon, and stopped there, and deceased and defendant had another conversation, which witness did not hear, and after this defendant invited deceased and witness to take a drink, which they did. The deceased then bade witness and defendant "Good-bye" and left, going east down Broad street, saying that he was going home. Shortly afterwards witness and defendant mounted horses and rode down the same street, going to College Hill. At a particular time, after going some distance, witness, when he was riding a short distance ahead, heard a noise behind, and, looking back, saw a man approaching on horseback, looking like he had been riding in a gallop, and heard him hollo, "Where in the hell are you fellers going?" and witness replied, "We are going over on the hill." , The man was the deceased. He rode alongside of the defendant. About this time a pistol was fired. Witness looked back, and saw deceased lying on the pommel of his saddle, and saw a pistol in the hand of the defendant.

The evidence clearly and conclusively proved that Garrett was killed by the defendant at the time of the shooting related by McDaniel.

The appellant, in testifying in his own behalf, stated that, at the time the deceased overtook them, McDaniel said to him, "Look out, he is going to shoot you!" The state, in cross-examining him, asked if he had instructed his attorneys to ask McDaniel, while he was testifying in the investigation before a justice of the peace, if he (McDaniel) made such statement, and the defendant objected, and the court held that the question was proper, but that the defendant could answer or not as he might elect, and he refused to answer.

In cross-examining the defendant, the state interrogated him about his association with McDaniel, which being admitted, asked, for the purpose of impeaching him as a witness, if he had not heard that McDaniel had been convicted of train robbery and murder in Texas and sentenced to the penitentiary for life and pardoned, which, being compelled to answer over his objections, he answered in the affirmative.

On direct examination he testified that one Van Williams, in the evening of the day on which Garrett was killed, informed him that the deceased at that time was angry, and attempted to borrow a pistol, and he thought had succeeded. On cross-examination he was asked if he had process issued for Van Williams, who was absent and did not testify. He offered the testimony of witness to explain Van Williams' absence, and the court would not allow him to do so.

The defendant offered to prove by witnesses that the deceased had the general reputation in the community in which he lived of going constantly armed, which the court excluded. He was, however, allowed to and did prove that the deceased had the general reputation of being a dangerous man.

One of the attorneys for the state in the closing speech to the jury in the case said: "Napoleon McDaniel (the witness whose testimony in the investigation before a justice of the peace was read as evidence) has not only been convicted of train robbery and murder, but is now confined in the jail of Bowie county, Texas, for murdering a poor old Confederate soldier." Defendant objecting to the remark, the court reprimanded the attorney, and told the jury not to consider it. "Whereupon," says the record in this case, "said attorney, supported by the prosecuting attorney, stated to the court, in the presence and hearing of the jury, that

the record showed this fact. Then on a discussion between the attorneys and the court, in the presence of the jury, it developed that the statement made by said attorney appeared on the sheriff's return on the subpœna issued for said witness McDaniel, except that relating to 'poor old Confederate soldier,' but that said subpœna was not made evidence in the case." Other improper remarks were made by the same attorney in his speech before the jury, which were excluded by the court from their consideration.

The defendant was convicted of murder in the second degree, and he appealed.

There was no reversible error in the refusal to issue a writ of certiorari to the clerk of the Miller circuit court, directing him to complete the transcript of the record and proceedings of that court, so as to show copies of his motion to quash the indictment and demurrer to the same. The record shows that the indictment is sufficient, and that it was regularly and properly found, returned into court, numbered and filed.

The question asked appellant, on cross-examination, as to his instructing his attorneys to ask McDaniel, when testifying in the investigation before the justice of the peace, if he (McDaniel) said at the time deceased was killed, "Look out, he is going to shoot you," and the remarks of the court as to the same, were not prejudicial. The testimony of McDaniel, which was read to the jury, shows that he did not testify as to what he said about the deceased shooting at the time of the killing. The only effect of the question was to call the attention of the jury to such failure, which the attorneys for the state could have done in their arguments before the jury.

The court committed no error in allowing the state, in cross-examining the appellant, to ask him "if he had not heard that the witness McDaniel had been convicted of train robbery and murder in Texas and sentenced to the penitentiary for life and pardoned." The question was admissible for the purpose of impeaching him as a witness. *Hollingworth* v. *State,* 53 Ark. 387.

Appellant should have been allowed to show why Van Williams did not testify, was absent. He (appellant) testified as to facts material to his defense which, if true, were within the knowlededge of Van Williams. The unexplained failure to introduce him as a witness was calculated to induce the jury to doubt or reject the testimony of appellant as to such facts.

The testimony as to the general reputation of the deceased for going armed was properly excluded. No one is justified in killing another because he has the reputation of going armed, or because he is armed. Such reputation is not allowed to be proved "as a substantive fact, in whole or in part absolutely constituting a defense, but as auxiliary to, and explanatory of, some fact or facts proved to have occurred at and in connection with the kill-ing, which tend to establish a defense when thereby aided by furnishing reasonable ground for the belief on the part of the slayer that he is then in immediate and imminent danger of the loss of his life, or receiving a great bodily injury, from the attack of his assailant." Such reputation, when unknown to the slayer, cannot contribute to a belief on his part that he is in imminent danger of losing his life or suffering a great bodily injury. But, it being a matter of public notoriety, it is sometimes presumed, in a proper case, that the slayer had knowledge of it. But this is not presumed when the slayer and deceased reside in different and distant communi-ties. *Horbach* v. *State,* 43 Texas, 242; *Harrison* v. *Com.* 79 Va. 374; s. c. 52 Am. Rep. 634; *Trabune* v. *Com.* (Ky.), 17 S. W. Rep. 186; Underhill on Criminal Evidence, § 324, and cases cited; 5 Am. & Eng. Enc. of Law (2d Ed.), 873, and notes, and cases cited. In this case there is no presumption of knowledge. Appel-lant resided in Bowie county, Texas, about fourteen miles west of Texarkana, Arkansas, and the deceased lived southeast of Tex-arkana, and in Miller county, in this state. There was no founda-tion laid for such presumption.

The remark of the attorney for the state as to the witness McDaniel being confined in jail for murdering a poor old Con-federate soldier was improper and prejudicial. It tended to impair the credibility of the witness McDaniel, and to thereby weaken his testimony as to facts material to the defense of appellant. They came within the rule announced in *Holder* v. *State,* 58 Ark. 473, and *Kansas City, Fort Scott & Memphis Railroad Company* v. *Sokal,* 61 Ark. 130.

Reverse and remand for a new trial.